# Lamar and Wife *v.* Brown.

### *Bill in Equity for Reformation and Foreclosure of Mortgage.*

1. *Proof of assignment of note, in suit by assignee.*—When the holder of a note given for the purchase-money of land, asserting his ownership, joins the payees and makers as defendants to a bill in equity, an admission by the payees of the averments of the bill estops them from asserting any claim to the note, and renders it unnecessary for the complainant to prove his ownership as against the makers.

2. *Chancellor's decree on question of fact.*—This court will not disturb the chancellor's decision on a disputed question of fact, unless the record clearly shows that he erred.

3. *Alteration of note.*—The words "with half legal interest till maturity," added to a promissory note after its execution and delivery, are a material alteration, and, in the absence of proof that they were not added by the payee, entirely annul the note as evidence of a debt.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. B. B. McCRAW.

The original bill in this case was filed on the 23d February, 1871, by Laura A. Brown, against Mrs. Kate Lamar and Albert R. Lamar, her husband, individually, and as trustee for his said wife; and sought to foreclose a mortgage on a tract of land, executed by the defendants to secure the payment of a promissory note, which was given by them in part payment of the purchase-money for the land, and was in the following words: "*Columbus*, December 9th, 1869. Twelve months after date, we promise to pay to Lawrence Rooney and Olivia S. Grigg, or bearer, the sum of nineteen hundred and twenty-five dollars ($1,925); given in part consideration of land purchased of them, lying in Lee county, Alabama; with half legal interest till maturity." The note was made an exhibit to the bill, and was signed by Mrs. Lamar, and by her husband as her trustee. The bill alleged, that the complainant was "the holder and owner of said note; that it was given in part payment of the purchase-money for the land, and was unpaid; that an absolute deed for the land was executed to the said Lamar and wife by the vendors, the payees of the note, and the mortgage on the lands taken to secure the payment of the note. In the bill, and also in the mortgage, which was made an exhibit to the bill, the lands were described as parts of sections thirty-four (34) and thirty-five (35), in township eighteen (18), range *thirty-nine* (39) east, "lying in Lee county, Alabama, and

containing four hundred and forty (440) acres, more or less."
The defendants answered the bill, under oath, admitting
that they had purchased a tract of land from Rooney and
Mrs. Grigg, and had given their note for $1,925, a part of
the purchase-money, with a mortgage on the lands to secure
its payment; but they denied that the note which they had
given contained any stipulation as to the payment of half
legal interest before maturity, and alleged that those words
were added to the note, after its execution and delivery,
without their knowledge or consent. They also denied that
the complainant was the owner of the note, and alleged that
the payees were still the legal and beneficial owners; and
they claimed an abatemeut of the purchase-money, to the
extent of $1,000, on account of alleged false and fraudulent
representations by Lamar, pending the negotiations for the
purchase, as to the quantity of a parcel of the land heav-
ily timbered, which he said contained two hundred acres,
whereas it only contained one hundred, and as to the value
of another tract containing eighty acres, which he said was
newly cleared, whereas it had been cleared eight or ten
years.

An amended bill was afterwards filed, bringing in Lawrence
Rooney and Mrs. Grigg as defendants; and they filed a joint
answer, admitting all the allegations of the bill. A second
amended bill was subsequently filed, alleging that, by mis-
take of the parties or the draughtsman, the lands were mis-
described in the deed and mortgage, being situated in range
*twenty*-nine (29) instead of *thirty*-nine (39); praying a reforma-
tion of the mortgage, and offering to correct the deed, so as
to describe the land correctly. To this second amended bill
Lamar and wife filed a joint answer, under oath, alleging
ignorance on their part of the true description of the lands,
and requiring proof of the alleged mistake; repeating the
averments of their first answer, as to the alteration of the
note, and the alleged misrepresentations as to the quantity
and quality of the lands; and praying that their answer
might be considered and treated as a cross bill, and that
they might be allowed an abatement of the purchase-money
on account of these misrepresentations.

The cause was submitted to the chancellor for final decree,
on pleadings and proof; the evidence offered on the part of
the complainant being the depositions of Lawrence Rooney
and Mrs. Grigg, and the exhibits to the bill, while the de-
fendants offered only their own depositions. The material
portions of the evidence, as to the alleged alteration of the
note, are fully stated in the opinion of the court; and it is
not necessary to state the evidence as to the other disputed

[Lamar and Wife v. Brown.]

facts. The chancellor held that the complainant was entitled to a reformation and foreclosure of the mortgage, and that the defendants were not entitled to an abatement of the purchase-money. He rendered a decree accordingly, and his decree is now assigned as error.

W. C. McIver, J. M. Russell, and Rice, Jones & Wiley, for appellants.—1. In suits for the reformation of written instruments, as at law, the complainants must be the parties really and beneficially interested.—3 Dan. Ch. Pr. (4th ed.) 1971, and notes; Story's Eq. Pl. §§ 509, 512, 232, and notes; Stone v. Hale, 17 Ala. 557; Baker v. Rowan, 2 Stew. & P. 361; Wilkins v. Judge, 14 Ala. 135; Voeglin v. Plant, 30 Ala. 160; 6 Paige, 597. The testimony of the defendants, as to the ownership of the note and mortgage, is uncontradicted.

2. The defendants were entitled to an abatement of the purchase-money, if the mortgage was reformed and foreclosed. As to the right to an abatement, under the proof, see Gibson v. Marquis, 29 Ala. 668; 1 Vesey, 310; 35 Vermont, 252.

3. But the complainant was not entitled to a foreclosure of the mortgage, which was but a security for the note. The addition of material words to the note, after its delivery, without the knowledge or consent of the makers, rendered it void.—Brown v. Jones, 3 Porter, 420; Davis v. Carlisle, 6 Ala. 70; White v. Hass, 32 Ala. 430; 43 Maine, 504; 40 Barbour, 16; 1 Allen, 477; 13 Ohio, 364; 30 Ind. 21; 6 Wallace, 80; 33 Miss. 399; 10 Mo. 348; 3 Amer. R. 327; Chitty on Contracts, 1161, and notes.

W. H. Barnes, contra.—1. The payees of the note having admitted the complainant's ownership, no proof of the assignment was necessary.—McLane & Plowman v. Riddle & Burt, 19 Ala. 180.

2. The mistake in the description of the land is manifest, since the mortgage describes it as lying in Lee county, Alabama, while the court must judicially know that range thirty-nine (39) is not in Alabama. The mistake being shown, there can be no doubt of the right to a reformation of the mortgage.—Clopton v. Martin, 11 Ala. 187; Hair v. LaBrouse, 10 Ala. 548; Larkins v. Biddle, 21 Ala. 252; Stone v. Hale, 17 Ala. 557; Whitehead v. Brown, 18 Ala. 682.

3. As to the alleged alteration of the note, the burden of proof was on the defendants, and they have not established it by a preponderance of the evidence. The whole of the note, including the words said to have been added to it after delivery, is in the handwriting of the deceased attorney, who

was the common agent of both parties in the preparation of the papers; and there is no proof whatever as to the time when the addition was made, or the circumstances attending it. The parties contradicting each other on this point, and the outside evidence failing to establish it, the defense is not sustained.

4. As to the claim for an abatement of the purchase-money, this also is defensive matter, and the record does not show any error in the chancellor's decision against it.

STONE, J.—We do not think, under the pleadings in this cause, that any question can be made, denying Mrs. Brown's right to maintain this suit. She avers that the note is hers, and makes Rooney and Mrs. Grigg defendants to the suit; and they, in their answers, admit the truth of this, and every other averment of the bill. This estops them from setting up any claim to the note, and renders it unnecessary that Mrs. Brown should offer any proof of her ownership.—*McLane v. Riddle*, 19 Ala. 180, and authorities cited.

2. The allegations in the answers, charging that, in making the sale, Rooney misrepresented the quantity of timbered land, and the freshness of one of the cultivated fields, are not sufficiently proved to justify us in reversing the chancellor's decree on this account. The testimony is too nearly balanced to enable us to affirm that we are convinced the chancellor erred in this finding. Hence, we can not find that the purchaser is entitled to any abatement of the purchase-price, on account of the alleged misrepresentations.

3. The only remaining question is as to the alleged alteration of the note which is the foundation of the present suit. The answers of Lamar and wife contain a plea of *non est factum*; the special ground of the plea being, that after the note was executed, it was altered, without the authority or consent of the makers, by adding to it the words "with half legal interest till maturity." This alteration, according to the Alabama rate of interest, would increase the amount of the indebtedness seventy-seven dollars, when the note matured. The testimony for complainant below, appellee here, is as follows: Rooney testified, that the signatures to the note and mortgage are in "the hand-writing of Mrs. Kate Lamar and of A. R. Lamar, and that he did see them sign the said mortgage and note: that witness, and Wiley Williams, the said A. R. Lamar and Kate Lamar were present at the signing of said note and mortgage." Wiley Williams was an old resident lawyer of the city of Columbus, Georgia, and died in that city about three years before Rooney's deposition was taken, June 4th, 1873. "The whole of said note

[Lamar and Wife v. Brown.]

is in the hand-writing of said Wiley Williams; that the said latter part of said note, to-wit: 'with half legal interest till maturity,' is in the hand-writing of said Wiley Williams; that the words, 'with half legal interest till maturity,' were not written at the same time the balance of said note was written; that the said words were in said note at the time said A. R. Lamar and Kate Lamar signed it; that he examined and read over said note, before it was signed, and saw the said words in it; and the parties signing it knew that they were in said note at the time they signed it." He then testified, that the interest was to be according to the laws of Alabama. Mrs. Grigg, the other payee of the note, testified that she did not see the note and mortgage signed. "She knows the hand-writing of the note and mortgage, and they are in the hand-writing of Wiley Williams. The whole of said note is in the hand-writing of Wiley Williams. The said words, 'with half legal interest till maturity,' are in the hand-writing of said Wiley Williams. Does not know whether the whole note with said words was written at the same time or not. * * One half (of land purchase) was to be paid down cash, and the other half was to be paid in twelve months, with half legal interest till maturity of the note; and after maturity, the note draws full legal interest. * * * Witness knows as to the half legal interest, from the face of the note, it being the note signed by the said parties for the said credit payment of said land." This deposition, like the other, was given June 4th, 1873.

The testimony for defendants, Lamar and wife, consisted of their own depositions, given April 8th, 1873. A. R. Lamar testified, as follows: "The note sued on is not the note I gave for the lands. The note sued on contains the following words, 'with half legal interest till maturity.' I never gave or signed any note containing said words. The note I gave did not contain any agreement to pay any interest whatever. Some days after the original transaction, and after the signing and delivery of the note, Lawrence Rooney met me on the street, and asked me to consent to have the words, 'with half legal interest till maturity,' inserted in the note; giving as a reason, that O. S. Grigg was dissatisfied that the note bore no interest; and that he, Lawrence Rooney, would pay one-half the interest, if I would pay the other half. I declined." He then admitted that the said words were in the hand-writing of Wiley Williams, the same "who drew the original note and papers." Mrs. Kate Lamar testified: "The note sued on is not the note I signed and gave for the land. The note I signed had nothing in it about interest, and the words, 'with half legal interest till maturity,' were

(11)

not on the note when I signed, and have been added to it since, without my knowledge or consent."

The description of the note in the mortgage, is as follows: "For the purpose of securing the payment of a certain promissory note, bearing even date with these presents, by which note the said Albert Lamar as trustee for his wife, and the said Mrs. Kate Lamar, promise to pay, twelve months after date, to the said L. Rooney and Mrs. Olivia S. Grigg, or bearer, the sum of nineteen hundred and twenty-five dollars, given in part consideration of lands purchased of them," &c.

One fact, testified to by Mr. Rooney, we think weakens his testimony somewhat. He says, "the words, 'with half legal interest till maturity,' were not written at the same time the balance of said note was written." Yet, he offers no explanation of this rather unusual fact. If such change was made in the writing, some reason or explanation could be given, why it was omitted in the first instance; and it could be shown when, and under what circumstances, the words were added. He remembered the controverted words were not written at the same time as the balance of the note. He certainly could have stated why this had so occurred. The reason for a change of the writing from the first draught, would quite as naturally impress itself on the memory of the witness, as would the fact of such change. The witness knew defendants had set up in defense, and in sworn answers, that the words, 'with half interest till maturity,' had been, without authority from them, inserted in the note, after they had executed and delivered it. This plea by defendants was calculated to reflect on the integrity of Rooney, and would necessarily stimulate the zeal of the witness to furnish every corroborating circumstance in support of his version of the transaction.

The fact that, in the description of the note given in the mortgage, the disputed clause of the note is not mentioned, is another circumstance to be weighed in this cause. Two witnesses, against the credibility of whose testimony nothing has been called to our attention, and we have found nothing in the record to cause us to distrust them, testify the very opposite of the witness Rooney, and that the words, 'with half legal interest till maturity,' were inserted in the note after it was executed and had passed from their hands. We are convinced that the chancellor erred in his finding on this, the most material issue in this cause.

Coming to the conclusion, that the note in suit was altered after its execution and delivery to the payees, in the particular above pointed out, without the authority of the makers, the consequence is, that the note is entirely annulled as an

[Moore v. Worthy.]

evidence of debt, and it can not uphold the complainant's bill, in the absence of proof that the payees, to whom the note was delivered, did not make the alteration.— *White v. Hass*, 32 Ala. 430; *Glover v. Robbins*, 49 Ala. 219; *Brown v. Jones*, 3 Por. 420.

The decree of the chancellor, so far as it reforms the mortgage, is free from error. The testimony convinces us, that the true numbers of the land intended to be conveyed are, the north-east quarter, the east half of the north-west quarter, and the north-west quarter of the north-west quarter of section thirty-four (34), and the north-west quarter of section thirty-five (35), in township eighteen (18), range twenty-nine (29), east. To the extent that it reforms the writings, the decree of the chancellor is affirmed. In all other respects, the bill is without proved equity, and the decree of the chancellor is reversed. Let the appellee pay the costs in this court, and in the court below.

